IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA A. ABRAHAM, LISA CAVE and SCOTT CAVE, on behalf of themselves and all other similarly situated, | : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | No. 14-4977 |
| OCWEN LOAN SERVICING, LLC, | : : | |
| Defendant. | : | |

**MEMORANDUM**

**PADOVA, J.**                                                          **November 7, 2014**

Presently before the Court is a Motion by Defendant Ocwen Loan Servicing, LLC ("Ocwen") to dismiss Plaintiffs' Class Action Complaint ("CAC"). The CAC raises two claims, a violation of the Pennsylvania Unfair Trade Practices Act and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. § 201-2(xxi), and a violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e(2)(A), f(1). For the following reasons, the Motion is granted in part and denied in part.

**I.      PROCEDURAL HISTORY**

This action was filed on August 25, 2014, pursuant to an agreement of the parties intended to rationalize several class action cases instituted before this Court against Ocwen and Saxon Mortgage, Inc. ("Saxon"). Lisa and Scott Cave had been plaintiffs in Civ. A. No. 11-4586. Another case, Civ. A. No. 12-5366, was filed by William D. Cave and Pamela Smith. Both cases were filed as class actions, and each raised claims against both Saxon and Ocwen involving a temporary loan modification contract under the federal Home Affordable

Modification Program ("HAMP"), as well as claims involving Ocwen's own in-house loan modification program.  While HAMP-related claims against Saxon remain to be litigated in both actions, Ocwen has been dismissed as a defendant in Civ. A. No. 12-5366 (see Docket Entry No. 54), and no claims involving HAMP remain against it in Civ. A. No. 11-4586.  A third civil action, No. 14-1776, styled Abraham v. Ocwen Loan Servicing LLC and brought by the same counsel, asserted class action claims against Ocwen based on its in-house modification program that were similar to Lisa and Scott Caves' in-house modification program claim in Civ. A. No. 11-4586.  The Abraham action, while initially marked as a related action to the other two cases, was reassigned to the Hon. Lawrence F. Stengel.  Pursuant to the parties' agreement:  (1) Judge Stengel's case was voluntarily dismissed (see Civ. A. No. 11-1776, Docket Entry No. 16); (2) the Caves' in-house modification program claim in Civ. A. No. 11-4586 was severed from the claims against Saxon; and (3) that severed claim was consolidated with Plaintiff Abraham's in-house modification program claim from Civ. A. No. 11-1776 into a new pleading, the CAC, filed as Civ. A. No. 14-4977.

We have issued several opinions in Civ. A. No. 11-4586 involving the Caves' claims against Saxon and Ocwen.  In Cave v. Saxon Mortg. Servs., Inc., Civ. A. 11-4586, 2012 WL 1957588, at *10 (E.D. Pa. May 30, 2012) ("Cave I"), we refused, inter alia, to dismiss Lisa and Scott Caves' claim against Saxon under the UTPCPL on the ground that it was barred by the economic loss doctrine.  We found that the claim was not barred because the Plaintiffs had alleged "a showing of harm that [was] distinct from the disappointed expectations evolving solely from an agreement."  Id. at *11 (citing Sunburst Paper, LLC v. Keating Fibre Int'l, Inc., Civ. A. No. 06-3959, 2006 WL 3097771, at *3 n.3 (E.D. Pa. Oct. 30, 2006)).  For example, the Caves had asserted that Saxon had failed to provide the paperwork they needed to get a

modification  Id.  In Cave v. Saxon Mortg. Servs., Inc., Civ. A. 11-4586, 2012 WL 6209891 (E.D. Pa. Dec. 12, 2012) ("Cave II"), we held that the allegations concerning the Balloon Disclosure in Lisa and Scott Caves' Ocwen in-house loan modification documents plausibly stated a claim under UTPCPL because the disclosure did not provide them with an estimate of the amount of the balloon payment, an explanation of how this payment would be calculated, or an amortization schedule for Plaintiffs' payments.  See id. at *9.[1]  We also found that the Caves' allegation that Ocwen failed to provide this information was sufficient to state a claim based on a "false, deceptive, or misleading representation" of Plaintiffs' debt under the FDCPA.  Cave II at *7 (citing 15 U.S.C. § 1692e).

We also issued an Opinion in Cave v. Saxon Mortg. Servs., Inc., Civ. A. No. 12-5366, 2013 WL 1915660 (E.D. Pa. May 9, 2013) ("Cave IV"), assessing the plausibility of William Cave's claim under the UTPCPL.  We determined in that Opinion that the UTPCPL claim against Saxon was not barred by the economic loss doctrine since Plaintiff plausibly alleged damages that were separate and distinct from those resulting from his breach of contract claim. Id. at *11-12.

## II.    FACTUAL ALLEGATIONS

Plaintiffs Lisa and Scott Cave obtained a thirty year, fixed rate mortgage loan in the amount of $236,300.00 from Saxon Mortgage, Inc. on November 23, 2005, at an interest rate of 8.65%.  (CAC ¶ 28.)   After experiencing financial difficulties, the Caves sought a loan modification from Saxon under HAMP.  (Id. ¶ 31.)   They entered into a Trial Period Plan

---

[1] We went on to hold in Cave II that the claim failed because the Caves had not alleged justifiable reliance, see Cave II, 2012 WL 6209891, at *10.  We later granted reconsideration of the reliance holding and permitted the claim to proceed.  Cave v. Saxon Mortg. Servs., Inc., Civ. A. No. 11-4586, 2013 WL 460082 (E.D. Pa. Feb. 6, 2013) ("Cave III").

("TPP").  (Id. ¶ 32.)  Although they successfully complied with their TPP obligations, Saxon denied them a permanent HAMP modification.  (Id. ¶ 33.)

Ocwen began servicing the Caves' loan on May 16, 2011.  (Id. ¶ 34.)  At the time, they were in default on the loan.  (Id. ¶ 35.)  Ocwen advised them that they would need to again apply for a HAMP modification, but if they did not qualify under HAMP, they would be considered for a modification under one of Ocwen's in-house modification programs.  (Id. ¶ 37.)  Ocwen denied them a HAMP modification.  (Id.)  It did offer them an in-house modification at an introductory annual interest rate of 2%, after which the rate would increase to 4.5% until the loan reached maturity.  (Id. ¶ 38.)  The modification agreement contained a "BALLOON DISCLOSURE," which advised the Caves that the modified loan had a balloon payment feature such that, even if they made all payments in full and on time, their loan would not be paid in full by the final payment date.  (Id. ¶ 39.)  Rather, the modification agreement stated that a single balloon payment would be due on December 1, 2035, but the agreement did not reveal the amount of the balloon payment or the method by which the payment would be calculated.  (Id.)  Prior to entering into the modification, Lisa Cave repeatedly attempted to ascertain the amount of the balloon payment.  (Id. ¶¶ 40-41.)  Ocwen's representatives refused to disclose the amount of the payment, despite the fact that they allegedly knew the exact amount the Caves would owe if they made all of their payments in full and on time.  (Id. ¶¶ 41-42.)  The Caves allege that they believed that the amount of the balloon payment would not be substantial and would be an amount they could afford.  (Id. ¶ 43.)  They accepted the modification.  (Id. ¶ 44.)  It was not until after the commencement of the related litigation against Saxon that Ocwen disclosed that the balloon payment would be $93,524.46, an amount equal to 34% of the $272,203.09 original principal of the modified loan.  (Id. ¶¶ 45-46.)  The CAC alleges that the Caves will be required

to obtain a new loan in order to finance the balloon payment at a time when they will be in the sixties and have no way of knowing whether they will be able to obtain the financing needed to pay it off.  (<u>Id.</u> ¶ 47.)

Plaintiff Lisa Abraham obtained a thirty year "fixed rate stepped payment" mortgage loan in the amount of $263,500.00 on June 18, 2007 from non-party Delta Funding Corporation at an annual interest rate of 8.59%.  (<u>Id.</u> ¶ 13.)  Shortly after the origination of the loan, Ocwen began servicing her account.  (<u>Id.</u> ¶ 15.)  Abraham filed a Chapter 7 bankruptcy petition on August 20, 2009, which was converted to a Chapter 13 proceeding on September 30, 2010, and was terminated and discharged on February 1, 2011.  (<u>Id.</u> ¶¶ 16-17.)  She entered into a loan modification agreement with Ocwen on June 18, 2010, providing a new balance of $322,838.81 at an annual interest rate of 6.4%.  (<u>Id.</u> ¶ 18.)  In February 2011, she again experienced financial problems.  (<u>Id.</u> ¶ 19.)  Ocwen repeatedly notified her of its intent to foreclose on her mortgage loan.  (<u>Id.</u> ¶ 20.)  She was told that she could apply for another loan modification to avoid foreclosure.  (<u>Id.</u>)  Ocwen offered her an in-house modification on November 23, 2012, at a new principal balance of $236,040.80, and an annual rate of 2%.  (<u>Id.</u> ¶ 21.)  This modification included a "BALLOON DISCLOSURE" advising her that, even if she made all payments in full and on time her loan would not be paid off by the final payment date.  (<u>Id.</u> ¶ 22.)  The disclosure did not reveal the amount of the balloon payment or how it would be calculated.  (<u>Id.</u>)  She made repeated inquiries of Ocwen to find out the amount of the balloon payment, but Ocwen's representatives refused to disclose the information.  (<u>Id.</u> ¶ 23.)  The CAC alleges that she believed the amount would not be substantial.  (<u>Id.</u> ¶ 24.)  In February 2014, Ocwen disclosed that the amount of her balloon payment would be $114,236.82, approximately 43% of the original principal of the loan, if she made all scheduled payments in full and on time.  (<u>Id.</u> ¶ 26.)

The CAC alleges that she will be required to obtain a new loan in order to finance the balloon payment at a time when she will be seventy-six years old, and that she has no way of knowing whether she will be able to obtain the financing needed to pay it off.  (Id. ¶ 27.)

## III.   STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).  We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.  DelRio-Mocci v. Connolly Props., Inc., 672 F.3d 241, 245 (3d Cir. 2012) (citing Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011)).  Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Twombly, 550 U.S. at 555 (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'"  Warren Gen. Hosp., 643 F.3d at 84 (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a

sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient "'to raise a right to relief above the speculative level.'" W. Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank, 712 F.3d 165, 169 (3d Cir. 2013) (quoting Twombly, 550 U.S. at 555).

## IV.  THE UTPCPL CLAIM

Ocwen first argues that the UTPCPL claim is barred by the economic loss doctrine. It contends that, because Plaintiffs do not allege anything other than economic damages, unaccompanied by physical injury or property damage, their UTPCPL is not plausible. It points out that the claim is predicated entirely on the alleged deceptive balloon payment disclosures that are part of the loan modification agreements, and argues that the claim is neither independent of nor extraneous to the agreements, but is instead inextricably intertwined with the agreements. It notes that the only losses articulated by Plaintiffs are references to "losses of money or property," "obligations to pay substantial balloon payments," "higher principle [sic] balances throughout the terms of their loans," "deterrence from seeking other remedies to address default," "damage to credit," and "additional income tax liability." (Def. Br. at 11-12 (quoting CAC ¶ 68).) Because these are all forms of loss that are economic in nature, Ocwen argues that recovery is barred as a matter of law by the economic loss doctrine.

Plaintiffs respond that they have alleged deceptive conduct that is separate and distinct from a breach of contract. They draw our attention to the fact that they have not asserted a breach of contract claim based on Ocwen violating the balloon modification agreements and do not seek damages flowing from such a breach. Instead, they have alleged that Ocwen engaged in deceptive conduct by failing to estimate the amount of the balloon payments, explaining how

they would be calculated, or providing an amortization schedule disclosing the amount of principal and interest the Plaintiffs would be paying over the life of the loan.  (Pls.' Br. at 10-11.) They also argue that we have already found that identical allegations in the previous iteration of the Lisa and Scott Caves' complaint supported a claim against Ocwen under the UTPCPL.[2]  (Id. at 12 (citing Cave II, 2012 WL 6209891, at *9).)

We held in Cave II that the Plaintiffs arguably stated a UTPCPL claim based on Ocwen's failure to disclose the amount of the balloon payment:

> Balloon terms in loan agreements have been found to constitute prohibited conduct under the UTPCPL where the borrower was not notified that executing the note could result in a large balloon payment and the note did not disclose or estimate the amount of the lump sum payment.  See In re Barker, 251 B.R. 250, 261-62 (Bankr. E. D. Pa. 2000).  Balloon terms have been found not to violate the UTPCPL where the amount of the balloon payment was clearly stated in the mortgage and balloon note.  See In re Fisher, 320 B.R. 52, 58, 71 (E. D. Pa. 2005).
>
> The Complaint alleges that the Balloon Disclosure provided by Ocwen to Plaintiffs does not provide an estimate of the amount of the balloon payment, an explanation of how this payment will be calculated, or an amortization schedule for Plaintiffs' payments. . . .  The Complaint's allegation that Ocwen failed to provide this information to Plaintiffs in easily understandable language and figures is sufficient to allege deceptive conduct, see In re Barker, 251 B.R. at 258-59, 261-62, because it would likely "deceive a consumer acting reasonably" into agreeing to a loan modification with a potentially unreasonable or unpredictable balloon payment.  Seldon [v. Home Loan Servs., Inc.], 647 F. Supp. 2d [451] at 470 [(E.D. Pa. 2009)].  Therefore, the Complaint adequately pleads facts alleging that Ocwen committed a deceptive act prohibited by the UTPCPL.

Cave II, 2012 WL 6209891, at *9 (internal citation to previous iteration of Complaint omitted).

In later addressing whether Plaintiffs had properly alleged reliance, we stated:

---

[2]  We note that Plaintiffs also argue that their allegations raise the inference that they were fraudulently induced by Ocwen to enter into the balloon modification agreements, and the law is clear that fraud in the inducement of a contract is not barred by the economic loss rule. (Pls.' Br. at 14 (citing JC Taylor Antique Auto Agency, Inc. v. Hewlett Packard Co., Civ. A. No. 14-3006, 2014 WL 3600505, at *1-4 (E.D. Pa. July 22, 2014).)  This argument suffers from the obvious problem that Plaintiffs do not attempt to state a common law claim for fraudulent inducement.  Their claim is the statutory claim under UTPCPL, to which the economic loss doctrine has been held to apply.

While the Complaint alleges that Plaintiffs agreed to the In-House Modification because they were fearful of foreclosure, it also alleges that the terms of Ocwen's In-House Modification were deceptive in that they omitted critical information about the amount of Plaintiffs' balloon payment, an explanation of how this payment would be calculated, and an amortization schedule for Plaintiffs' payments. Under these circumstances, we now find that it is reasonable to infer that Plaintiffs agreed to the In-House Modification not only because they feared losing their home, but also based on the allegedly misleading terms of the In-House Modification presented to them. Moreover, reading the allegations in the Complaint in the light most favorable to Plaintiffs, those allegations further support a reasonable inference that if Ocwen had accurately described Plaintiffs' balloon payment, Plaintiffs would not have agreed to the In-House Modification. We therefore conclude that the Complaint adequately alleges justifiable reliance on Ocwen's allegedly deceptive conduct under the UTPCPL, and, on that basis, we grant Plaintiffs' Motion to reconsider our prior order, which was grounded on a contrary conclusion.

Cave III, 2013 WL 460082, at *1 (internal citations to previous iteration of complaint omitted).

In Cave IV, we fully set out the elements of claims under the UTPCPL and how the economic loss doctrine affected William Cave's and Pamela Smith's claims against Saxon:

The UTPCPL prohibits "[u]nfair or deceptive acts or practices in the conduct of any trade or commerce." 73 Pa. Stat. § 201-3. The statute prohibits, in the catchall provision, "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding" in the conduct of trade or commerce. 73 Pa. Stat. § 201-2(4)(xxi). To state a plausible claim under the UTPCPL, the Complaint must allege that: "(1) [Plaintiffs] purchased or leased goods or services primarily for a personal, family, or household purpose; (2) [Plaintiffs] suffered an ascertainable loss of money or property; and (3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL." Baynes v. George E. Mason Funeral Home, Inc., Civ. A. No. 09-153, 2011 WL 2181469, at *4 (W.D. Pa. June 2, 2011) (citing 73 Pa. Stat. § 201–9.2(a)). The Complaint must also allege that Plaintiffs justifiably relied on the deceptive conduct. See Hunt v. U.S. Tobacco Co., 538 F.3d 217, 224 (3d Cir. 2008) (concluding that "plaintiffs alleging deceptive conduct under the . . . catchall provision must allege justifiable reliance"). In other words, the Complaint must allege that knowledge of the deceptive conduct "would have changed [Plaintiffs'] conduct." Id. at 227.

. . . The economic loss doctrine "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 618 (3d Cir. 1995)). Consequently, the doctrine limits plaintiffs to their contract claims "'when loss of the benefit of a bargain is the plaintiff[s'] sole loss.'" Bohler-

> Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 (3d Cir. 2001)
> (quoting Duquesne Light, 66 F.3d at 618).  To avoid application of the economic
> loss doctrine, plaintiffs must articulate "harm that is distinct from the disappointed
> expectations evolving solely from an agreement."   Sunburst Paper, LLC v.
> Keating Fibre Int'l, Inc., Civ. A. No. 06-3959, 2006 WL 3097771, at *3 n.3 (E.D.
> Pa. Oct. 30, 2006) (citation omitted).

Cave IV, 2013 WL 1915660, at *9-10.  We held that the UTPCPL claim against Saxon was not barred by the economic loss doctrine because William Cave and Pamela Smith had alleged specific damages separate from damages for breach of contract.  Id. at *12 ("Reading the allegations of the Complaint liberally, we cannot conclude that the Complaint does not allege damages that are separate and distinct from those resulting from Plaintiffs' breach of contract claim.  The damages that resulted from Saxon's allegedly deceptive conduct in assuring Plaintiffs that they were still in their temporary trial plans after those plans had ended, by providing erroneous and misleading information about their mortgages, and by frustrating Smith's attempts to obtain a HEMAP loan, are likely different from those damages resulting from Saxon's alleged breach of Plaintiffs' TPPs.").

In Werwinski, cited above in Cave IV, the United States Court of Appeals for the Third Circuit held that where a defendant's allegedly fraudulent misrepresentations concerned the subject of a contract between the plaintiff and the defendant, the tort claims were clearly intertwined with, rather than extraneous to, the contract claims and are barred by the economic loss doctrine.  Id., 286 F.3d at 678.  Courts have applied Werwinski, inter alia, to bar UTPCPL claims where allegedly deceptive conduct "is clearly interwoven with":  (1) an insurance contract, see, e.g., Sicherman v. Nationwide Life Ins. Co., Civ. A. No. 11-7227, 2012 WL 1122737, at *4 (E.D. Pa. Apr. 4, 2012) (dismissing UTPCPL claim where wife's claim that defendant deceived her late husband into letting his life insurance policy lapse was critically related to the alleged breach); (2) a construction contract, see, e.g., Gadley v. Ellis, Civ. A. No.

13-17, 2014 WL 3696209, at *6 (W.D. Pa. July 23, 2014) (granting summary judgment on UTPCPL claim where only claim of property damage was to property that was subject of the construction contract); and (3) a mortgage loan agreement, see, e.g., Schwartz v. OneWest Bank, FSB, Civ. A. No. 13-113, 2013 WL 6037078, at *6 (E.D. Pa. Nov. 13, 2013) (dismissing UTPCPL claim where claims "turns on the construction of the language of the mortgage" and were "necessarily interwoven with the mortgage itself").[3]

Consistent with our prior holdings, we find that the CAC plausibly alleges a UTPCPL claim that is separate and distinct from a breach of contract, and the claim is thus not barred by the economic loss doctrine.  The CAC alleges that the balloon disclosure modification agreement is deceptive because it fails to disclose the amount of the balloon payment or a method by which it will be calculated.  The statutory claim does not flow from the contractual obligation contained in the language of the modification — i.e., a failure by Ocwen to make the loan on the terms provided in the agreement — but rather from the information Ocwen failed to provide the Plaintiffs before they entered in the agreements.  The CAC alleges that each Plaintiff made repeated inquiries of Ocwen to attempt to find out the amount of the balloon payment that would be owed at the end of their respective loans, but each time Ocwen's representatives refused to disclose the amount, even though the information was readily accessible from the Ocwen database used by its customer service representatives.  The CAC alleges that as a result of the

---

[3] Werwinski has drawn considerable criticism.  See, e.g., O'Keefe v. Mercedes-Benz HV USA, LLC, 214 F.R.D. 266, 275 (E.D. Pa. 2003) (stating that Pennsylvania's statutory construction statute, 1 Pa. Stat. Ann. § 1921, "clearly bars applying common law doctrine to overturn legislative acts enacted after September 1, 1937") (citations omitted).  Recent authority from the Pennsylvania Superior Court casts the Third Circuit's rationale into further doubt.  See Knight v. Springfield Hyundai, 81 A.3d 940, 951-52 (Pa. Super. Ct. 2013) (limiting application of economic loss doctrine to claims sounding in negligence and, on that basis, holding that statutory claims brought under the UTPCPL are not barred).  It does, however, remain the binding law of the Third Circuit.

failure to disclose the balloon payment amount, Plaintiffs are obligated to pay substantial balloon payments at the end of their loans, will have higher principal balances throughout the terms of their loans, will suffer damage to their credit, and will have increased income tax liabilities. Because these are not contract damages, we conclude that the economic loss doctrine does not bar Plaintiffs' UTPCPL claim.

## V.     THE FDCPA CLAIM

The FDCPA claim contained in Count II asserts violations of 15 U.S.C. §§ 1692e(2)(A) and 1692f(1).  Section 1692(e) provides in pertinent part that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . . (2) The false representation of -- (A) the character, amount, or legal status of any debt. . . .

15 U.S.C. §§ 1692e(2)(A).  Section 1692f(1) provides that:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:  (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

15 U.S.C. § 1692f(1).  Communications between lenders and debtors are analyzed from the perspective of the "least sophisticated debtor," which is "lower than the standard of a reasonable debtor" in that "'[a] communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor.'"  Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008) (quoting Brown v. Card Serv. Ctr., 464 F.3d 450, 454 (3d Cir. 2006)) (citation omitted).  Specifically, a communication is deceptive for purposes of the FDCPA if "it can be reasonably read to have two or more different meanings, one of which is inaccurate, viewed from the perspective of the least sophisticated consumer."  Reed v. Pinnacle Credit

Services, LLC, Civ. A. No. 09-544, 2009 WL 2461852, at *4 (E.D. Pa. Aug. 11, 2009) (quotation omitted).  Ocwen seeks dismissal of the FDCPA claim on several grounds.  We will discuss each argument individually.

### A.    Failure to Allege an Actionable Communication

Ocwen first asserts that courts have found that loan modification agreements do not constitute actionable communications under 15 U.S.C. § 1692e because they are not "demands for payment" of a debt.  (Def. Br. at 13-14 (citing Glover v. Udren, Civ. A. No. 08-990, 2014 WL 4348078, at *5 (W.D. Pa. Sept. 2, 2014) (holding that loan modification agreement and transmittal letter sending it to plaintiff were not actionable communications because they did not constitute demands for payment); Nash v. Green Tree Serv., LLC, 943 F. Supp. 2d 640, 656 (E.D. Va. 2013) (holding that a loan modification agreement is not actionable under the FDCPA even where it causes plaintiff's "purported arrears to be added to her loan balance, along with the fees [the servicer] was attempting to collect" because such "letters [did] not demand payment, but simply allow[ed plaintiff] one last opportunity to modify her loan through her lender")).  Because the only communication referenced in the CAC is the Ocwen in-house loan modification agreement containing the balloon disclosure, which cannot constitute a demand for payment or an attempt to otherwise collect the underlying debt, Ocwen contends that the Section 1692e aspect of the FDCPA claim is not plausible.

Plaintiffs respond that they have adequately alleged a communication, as defined by 15 U.S.C. § 1692a(2) to mean "the conveying of information regarding a debt directly or indirectly to any person through any medium."  They point out that the modification package Ocwen sent to them expressly stated:  "This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose."  (Pls.' Br. at 17 (quoting CAC

Exs. A, B).)  They note that neither of the two cases cited by Ocwen for the proposition that loan modification agreements are not actionable communications — Glover and Nash — are binding precedent, and that both decisions adjudicate summary judgment motions, not the adequacy of the pleadings made by those plaintiffs.  Plaintiffs reject Ocwen's assertion that a communication must demand payment in order to be actionable, noting that the Seventh Circuit has held that "[n]either this circuit nor any other has established a bright line rule for determining whether a communication from a debt collector was made in connection with the collection of a debt" (Pl's. Br. at 18 (quoting Gburek v. Litton Loan Serv. LP, 614 F.3d 380, 384 (7th Cir. 2010)), and they note that several courts have held that communications regarding loan modifications can be actionable under the FDCPA.  (Id. (citing Lopez v. AM Solutions, LLC, Civ. A. No. 13-1689, 2014 WL 1272773, at *1 (C.D. Cal. Mar. 3, 2014) (holding that letter offering to modify loan constituted an attempt to collect underlying debt); Galate v. Ocwen Loan Serv., LLC, Civ. A. No. 13-1939, 2014 WL 3616354, at *31 (D. Md. July 18, 2014) (denying motion to dismiss FDCPA claim in connection with loan modification); and Rockridge Trust v. Wells Fargo, N.A., 985 F. Supp. 2d 1110, 1129, 1137-38 (N.D. Cal. 2013) (denying motion to dismiss FDCPA claim alleging deceptive conduct in connection with loan modification)).

We reject Ocwen's argument that the loan modification agreement cannot constitute an actionable communication because it was not a demand for payment of a debt.  First, the cases it cites are distinguishable.  In Nash, the communication that was found to be not actionable was a letter notifying the mortgagor that she was potentially eligible for a loan modification, not an actual loan modification agreement.  The court concluded that such letters "do not bear any of the tell-tale signs of a communication in violation of FDCPA.  The letters do not demand payment, but simply allow Nash one last opportunity to modify her loan through her lender,

Fannie Mae. The animating purpose of the letters is not to induce payment of the debt." Id., 943 F. Supp. 2d at 656.  In Glover, the decision adjudicated a summary judgment motion on the ground that the plaintiff had "failed to provide any evidence of a communication in which [the bank] did not identify itself as a debt collector in violation of section 1692e and only offered textbook bare assertions in support of her conclusions." Id., 2014 WL 4348078, at *5.[4]

Plaintiffs' argument on this point is also flawed.  Their reference to the fact that the modification package Ocwen sent to them expressly stated that it was a communication from a debt collector attempting to collect a debt is not determinative.  Several circuits have held that this Miranda-style debt collection warning "does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance." Gburek, 614 F.3d at 386 n.3 (citing Lewis v. ACB Bus. Servs., Inc., 135 F.3d 389, 400 (6th Cir. 1998)); see also Maynard v. Cannon, 401 F. App'x 389, 395 (10th Cir. 2010) (stating that the inclusion of the FDCPA notice is legally irrelevant to whether communication is actionable).

---

[4]    In Glover, after a Magistrate Judge had issued a Report and Recommendation concluding that the lender's motion for summary judgment should be granted, plaintiff filed objections in which she identified a loan modification agreement transmittal letter as evidence of an actionable communication.  Addressing the transmittal letter, the district court stated:

> Plaintiff's argument that the LMA "transmittal letter" is an actionable communication under the FDCPA, but provides no authority that a so-called "transmittal letter" is distinguishable from a loan modification agreement as not being considered an actionable communication under the FDCPA because it does not constitute a demand for payment.  See Nash v. Green Tree Servicing, 943 F.Supp.2d 640, 656 (E.D. Va. 2013) (a loan modification agreement is not actionable under the FDCPA even where it causes plaintiff's "purported arrears to be added to her loan balance, along with the fees [the servicer] was attempting to collect" because such "letters [did] not demand payment, but simply allow[ed] plaintiff] one last opportunity to modify her loan through her lender.").

Id.  It is unclear how the Glover court's citation to Nash addresses the problem identified by the Magistrate Judge that the plaintiff failed to adduce evidence that the bank failed to identify itself as a debt collector.

Nonetheless, we find that Plaintiffs have met their pleading obligation to set forth sufficient facts to show that, in transmitting the balloon modification, Ocwen was attempting to collect a debt, thus creating an actionable communication.  The Third Circuit "embraces a broad definition of 'debt collection.'"   Haber v. Bank of Am., N.A., Civ. A. No. 14-169, 2014 WL 2921659, at *8 (E.D. Pa. June 27, 2014) (citing Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227 (3d Cir. 2005).  The CAC alleges that Plaintiff Abraham fell behind on her mortgage, filed a bankruptcy petition, entered into an initial loan modification agreement, again fell behind on her payments, was repeatedly notified by Ocwen that it intended to foreclose, and was served with foreclosure notices before she entered into the balloon modification at issue here.  (CAC ¶¶ 16-20.)  The CAC allege that the Caves were in default of their mortgage with Saxon when Ocwen took over servicing the loan and offered them the balloon modification.  (Id. ¶¶ 35-38.)  Because the Plaintiffs were in arrears on their loans, and they allege that Ocwen offered them the balloon modification to obtain payment of the underlying debt, we find that the modifications fall within the Third Circuit's broad definition of debt collection.  See Haber, 2014 WL 2921659, at *7-8 (stating that, "consistent with Third Circuit precedent," "'if a purpose of an activity taken in relation to a debt is to "obtain payment" of the debt, the activity is properly considered debt collection'" (quoting Glazer v. Chase Home Fin., LLC, 704 F.3d 453, 463 (6th Cir. 2013)).

**B.     Failure to Allege a False, Deceptive or Misleading Communication**

Second, Ocwen asserts that the CAC, which it asserts pleads nothing more than a formulaic recitation of the statutory provisions and the language of the balloon disclosure, fails to allege a false, deceptive, or misleading communication under Section 1692e.  Instead, Ocwen asserts, the CAC only alleges that Plaintiffs were unable to calculate or determine the amount of the balloon payment based on the content of the disclosure.  Ocwen argues that the mere failure

to disclose the amount of the debt alone has been held insufficient to state a claim under Section 1692e(2)(A).   (Def's. Br. at 16-17 (citing <u>Hoover v. Monarch Recovery Mgmt., Inc.</u>, 888 F. Supp. 2d 589, 600 (E.D. Pa. 2012)).)   Moreover, Ocwen contends that the failure to disclose the amount of the balloon payment could not have been deceptive as a matter of law because Ocwen itself was unable to calculate the amount that would be outstanding at the end of the loan term.   It points out that the disclosure informed the Plaintiffs that the amount "may vary depending on your payment history" and that the payment would be "in an amount equal to all remaining amounts under the Note and Modification."   Because the payments Plaintiffs might make over the course of the loan term could not be accurately predicted, Ocwen claims it could not know the exact amount that would be outstanding at the end of the loan term.   (Def's. Br. at 17-18.)

In response to Ocwen's second argument, Plaintiffs argue they have adequately alleged a violation of Section 1692e based on Ocwen's failure to:   (1) disclose an estimate of Plaintiffs' balloon payments, (2) an explanation of how they would be calculated, or (3) provide an amortization schedule disclosing the amount of principal and interest they would pay over the term of the loan and the rate at which the principal balance would be paid down.   They note that we have already upheld their identical claim in our <u>Cave II</u> decision, rejecting Ocwen's arguments that there were no misleading terms in the balloon disclosure, and finding that the failure to provide the information was sufficient to state a claim for a violation of Section 1692e. (Pl's. Br. at 19-20 (citing <u>Cave II</u>, 2012 WL 6209891, at *7).)

Plaintiffs are correct that we have already decided in <u>Cave II</u> that similar allegations concerning Ocwen's failure to disclose the amount of the balloon payment, or the method by which it would be calculated, stated a plausible claim for violation of Section 1692e:

> The Balloon Disclosure provision does not reveal the amount of the balloon payment, how such payment will be calculated, or an amortization schedule. . . .

> It is likely that these representations and omissions could "deceive or mislead the least sophisticated debtor" who could then sign the modification agreement without fully understanding its implications on her debt. Rosenau, 539 F.3d at 221. Plaintiffs may not have understood how to calculate the balloon payment, or how their payments would change over the duration of the modification agreement. The Complaint's allegation that Ocwen failed to provide this information is therefore sufficient to state a claim based on a "false, deceptive, or misleading representation" of Plaintiffs' debt under the FDCPA. 15 U.S.C. § 1692e.

Cave II, 2012 WL 6209891, at *7 (internal citation and footnote omitted). The holding that the failure to disclose the amount of the balloon payment was sufficient to state a false or misleading representation constitutes the law of the case, vis-à-vis the Caves, since it involved the same parties and the same factual allegations.[5] Because Abraham makes substantially similar allegations, we find that she too has sufficiently stated a false or misleading representation.

Ocwen's citation to Hoover, does not change this; indeed, we find that the holding of Hoover is clearly distinguishable. In Hoover, Judge Gardner stated:

> Under § 1692, Congress explicitly requires debt collectors to inform consumers of the fact that they are debt collectors and that any information obtained will be used for that purpose. 15 U.S.C. § 1692e(11). That Congress did not include other requirements, such as the amount of the debt and the original creditor's identity, while requiring such information in § 1692g, indicates that Congress did not intend for the omission of such information to constitute a violation of § 1692e.

---

[5] "The '[l]aw of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.'" In re Pharmacy Benefit Managers Antitrust Litig., 582 F.3d 432, 439 (3d Cir. 2009) (alteration in original) (quoting Casey v. Planned Parenthood of Se. Pa., 14 F.3d 848, 856 (3d Cir. 1994) (internal quotation omitted)). The "doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation." Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 116 (3d Cir. 1997). Pursuant to the doctrine, a court should only reconsider issues decided earlier in the litigation in extraordinary circumstances, such as when "(1) new evidence is available; (2) a supervening new law has been announced; or (3) the earlier decision was clearly erroneous and would create manifest injustice." Id. at 117 (citations omitted).

Hoover, 888 F. Supp. 2d at 600.  Here, Plaintiffs are not relying on either Section 1692e(11) or

Section 1692g.  Rather, they rely on Section 1692e(2)(A), which specifically applies to the false

representation of "the character, <u>amount</u>, or legal status of any debt."  15 U.S.C. § 1692e(2)(A)

(emphasis added).  Also, the plaintiffs in Hoover were contending that the defendant was liable

based on a voice mail message, not a written communication, which led Judge Gardner to

distinguish the requirements of Section 1692e(11) (governing oral communications) from

Section 1692g (requiring a follow-up written communication stating, *inter alia*, the amount of

the debt within five days of an initial oral communication).

### C.    Failure to Allege Deception as a Matter of Law

Ocwen next contends the failure to disclose the amount of the balloon payment could not

have been deceptive as a matter of law because Ocwen itself was unable to calculate the future

amount that would be outstanding at the end of the loan term.  It points out that the disclosure

informed the Plaintiffs that the amount "may vary depending on your payment history" and that

the payment would be "in an amount equal to all remaining amounts under the Note and

Modification."  Because the payments Plaintiffs might make over the course of the loan term

could not be accurately predicted, Ocwen claims it could not know the exact amount that would

be outstanding at the end of the loan term.  (Def's. Br. at 17-18.)  Plaintiffs refute the factual

assertion underpinning this argument, namely that Ocwen was unable to determine the amount of

the balloon payment, and thus could not be required to disclose it.  They point to the allegations

in the CAC, which must be accepted as true, that Ocwen knew and failed to disclose at the time

the loan was made the precise amount of the balloon payment Plaintiffs would owe "if they made

all of their payments in full and on time."  (Pl's. Br. at 21 (citing CAC ¶¶ 41, 46).)  They argue

that the fact that the amount of the balloon payment could change at some point after the

agreement was accepted by a borrower is an improper factual argument that is not appropriate for resolution in a motion to dismiss.

We find that this part of Ocwen's argument is meritless.  First, Ocwen's argument that its disclosures that the balloon payment "may vary depending on your payment history" and that the payment would be "in an amount equal to all remaining amounts under the Note and Modification" were sufficient as a matter of law is unsupported by any case citations.  More importantly, Ocwen's argument misreads the nature of the CAC's allegations.  The CAC does not assert that it was deceptive for Ocwen to fail to "predict the future" so that it could disclose the actual payment the Plaintiffs would need to make at the end of the loan term.  Rather, the CAC asserts that Plaintiffs asked for — and Ocwen knew and failed to disclose at the time the loan was made — the amount of the balloon payments they would owe "if they made all of their payments in full and on time."  Plaintiffs are not alleging that Ocwen had a duty to predict the future; only that it had the ability to calculate the payment based upon the assumption that the Plaintiffs met their obligations to make their payments on time, and that it had a duty to disclose the amount of the balloon payment based on that assumption so that the Plaintiffs could make an informed decision whether they could reasonable afford to make the balloon payment.  Applying the least sophisticated borrower standard, these allegations are sufficient to raise the claim above the plausible level.

### D.    Failure to Allege that Ocwen Collected the Balloon Payment

Third, Ocwen argues that although the CAC references that Ocwen collected the initial payment the Caves made on their loan and the monthly payments they have made during the loan term, there is no allegation under Section 1692e that Ocwen actually collected or attempted to collect the balloon payment, which is the focus of the claim, and by the terms of the loan the

balloon payment is not even due until December 1, 2035.  (Def's. Br. at 18 (citing CAC ¶¶ 38, 39, 44; Ex. B at 3).)  We reject this argument.  Plaintiffs assert that the allegedly deceptive modification agreement constituted an attempt by Ocwen to collect the underlying debt.  Thus, the fact that the balloon payment is not yet due is irrelevant to the plausibility of the claim.

### E.  Failure to Allege Collection of an Amount Not Authorized

Finally, Ocwen seeks dismissal of the Section 1692f(1) aspect of the FDCPA claim on the ground that Plaintiffs fail to state a plausible claim that Ocwen attempted to collect any amount that was not expressly authorized by the agreement creating the debt or permitted by law. It argues that, by its terms, the in-house loan modification agreement authorized Ocwen to collect the balloon payment, as part of the total principal balance due under the loan agreement, which Plaintiffs admit in the CAC.  (CAC ¶ 39; Ex. B at 1.)  The agreement also stated that the total principal balance of the Plaintiffs' modified loans, including the balloon payments.  As collection of these total amounts was expressly authorized by the agreement, any claim based on the balloon payment portion of that total amount cannot be unauthorized.  (Def's. Br. at 19-21.) Plaintiffs respond that their allegations concerning the deceptive nature of the failure to disclose the amount of the balloon payment or a method to calculate that amount suffice to show that the balloon payment is not an "expressly authorized" debt.  (Pl's. Br. at 22.)

We find that the CAC fails to state a plausible violation of Section 1692f(1).  The Third Circuit has stated that "'[t]he only inquiry under § 1692f(1) is whether the amount collected was expressly authorized by the agreement creating the debt or permitted by law. . . .'"  Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 354 (E.D. Pa. 2013) (quoting Allen ex re. Martin v. LaSalle Bank, N.A., 629 F.3d 364, 368 (3d Cir. 2011)).  Having disclosed the total amount of the principal balances of Plaintiffs' loans, including the balloon payment, collection of the total

principal was "authorized" by the loan modification agreements themselves, irrespective of the failure to also disclose the subtotal amount constituting each loan's balloon payment, or how that subtotal part of the total principal would be calculated.  Accordingly, the portion of the FDCPA claim premised on Section 1692f(1) is dismissed.

## VI.    CONCLUSION

For the reasons stated, Ocwen's Motion to Dismiss the CAC is granted only as to that portion of Count II that alleges a violation of 15 U.S.C. § 1692f.  The Motion is denied in all other respects.  An appropriate order follows.

BY THE COURT:


/s/ John R. Padova

_____

John R. Padova, J.