IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA A. ABRAHAM, LISA CAVE, SCOTT CAVE, LEE ANN KAMINSKI, and MARK E. KAMINSKI, on behalf of themselves and all others similarly situated, | : : : : : | CIVIL ACTION |
| Plaintiffs, | : : | |
| v. | : : | No. 14-4977 |
| OCWEN LOAN SERVICING, LLC, | : : | |
| Defendant. | : | |

**MEMORANDUM**

**PADOVA, J.**                                                                             **May17th, 2016**

Plaintiffs Lisa A. Abraham, Lisa Cave, Scott Cave, Lee Ann Kaminski and Mark E. Kaminski ("Plaintiffs") have moved for leave to file a Second Amended Complaint ("SAC"). Plaintiffs assert that the amendment has several purposes:  to update the pleading to reflect information that they obtained in class certification-related discovery, to add a claim for breach of contract based upon that newly discovered evidence, and to propose a new nationwide class of borrowers to pursue the new breach of contract claim.  The Motion is opposed by Defendant Ocwen Loan Servicing, LLC ("Ocwen").  For the following reasons, the Motion is granted in part and denied in part.

**I.      BACKGROUND**

On July 20, 2011, the Caves filed their first class action complaint in the related case, Cave v. Saxon Mortgage Servs., Inc., Civ. A. No. 11-04586 ("Cave I").  (Cave I Compl., at Dkt. No. 1.)  That Complaint primarily alleged that their prior mortgage loan servicer, Saxon Mortgage Services, Inc., wrongfully denied their application for a loan modification under the

Home Affordable Modification Program.  (Id.)  That Complaint contained only three allegations addressing Ocwen and only one specific allegation addressing the "balloon disclosure" that forms the basis of Plaintiffs' current claims.  (Id. at ¶¶ 69-71.)

The original complaint did not assert any balloon-disclosure related class claims, nor did the Caves purport to represent a balloon-disclosure related putative class.  (See id. at ¶¶ 73-86.) The Caves' first putative class claims addressing Ocwen's balloon disclosures were asserted in the First Amended Class Action Complaint filed in Cave I on February 14, 2013.  (See Cave I, at Dkt. No. 60, at ¶¶ 2, 69-71, 73.)  The Caves asserted individual and putative class claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-2(xxi) ("UTPCPL") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). (Id. at ¶¶ 105-121.)   Thereafter, Ocwen and the Caves engaged in pre-class certification discovery.  (See Def. Ex. At Dkt. No. 38 (Declaration of Brian M. Forbes, dated March 4, 2016) at ¶ 4 ("Forbes Decl.").)

Pursuant to a Stipulation and Order entered in Cave I (Dkt. No. 85), on August 25, 2014, the Caves and Plaintiff Abraham filed a consolidated Class Action Complaint ("CAC") in this action that consolidated the Caves' balloon-disclosure related claims with a virtually identical action filed by Abraham on March 25, 2014.  (See CAC at Dkt. No. 1.)  In the CAC, the Caves re-asserted their UTPCPL and FDCPA claims and Abraham asserted a single UTPCPL claim against Ocwen.  (Id. at ¶¶ 61-76.)  Plaintiffs' claims were based on the alleged theory that the Plaintiffs' Loan Modification Agreements contained balloon disclosures that did not disclose the estimated dollar amount of the balloon payment due at the maturity date of Plaintiffs' loans or how the balloon payment was calculated, and that these alleged failures were "unfair,"

"deceptive," and/or "unconscionable."  (Id. at ¶¶ 66-68, 73-74.)  Plaintiffs sought to represent a

Pennsylvania-only putative class defined as:

> All Pennsylvania homeowners whose mortgage loans have been serviced by
> Defendant Ocwen, and who have entered into a Loan Modification Agreement
> with Ocwen that contains a "Balloon Disclosure" provision which does not
> disclose the amount of the balloon payment that the borrower will owe at the end
> of the term of the loan.

(Id. at ¶ 49.)  Thereafter, we granted Ocwen's motion to dismiss in part, which eliminated a

portion of Plaintiffs' FDCPA claim.  Abraham v. Ocwen Loan Servicing, LLC, Civ. A. No. 14-

4977, 2014 WL 5795600 (E.D. Pa. Nov. 7, 2014).

On February 25, 2015, Plaintiffs filed a First Amended Class Action Complaint ("FAC"),

the filing of which was unopposed by Ocwen.  (Dkt. No. 27).  The FAC reasserted the same

individual and putative class claims on behalf of the Caves and Abraham.  (See FAC at ¶¶ 2-6,

77-91.)  The FAC also added two new named plaintiffs, Lee Ann Kaminski and Mark E.

Kaminski, who asserted a new cause of action against Ocwen under the New Jersey Consumer

Fraud Act, N.J.S.A. § 56:8-1, et seq. ("NJCFA"), and who sought to represent a new proposed

putative class of New Jersey homeowners.  (See id. at ¶¶ 49-62, 65, 92-99.)  Plaintiffs' New

Jersey-only putative class was defined to include New Jersey borrowers "who have entered into a

Loan Modification Agreement with Ocwen that contains a 'Balloon Disclosure' provision which

does not disclose the amount of the balloon payment that the borrower will owe at the end of the

term of the loan."  (Id. at ¶ 65.)  The Kaminskis' claims are based on the same theory as the other

Plaintiffs' claims.  (See id. at ¶¶ 92-99.)  Ocwen filed an answer on March 27, 2015, and the

parties engaged in further written and document discovery, followed by fact depositions and

class certification expert discovery.  (See Forbes Decl. at ¶ 6.)

Pursuant to the parties' stipulated case management schedule, the period for non-expert discovery related to class certification closed on November 10, 2015.  (See Dkt. No. 33.)  The parties exchanged class certification expert disclosures and expert reports on December 21, 2015 and January 27, 2016, and Plaintiffs served a rebuttal expert report on February 12, 2016.  (See Forbes Decl. at ¶ 8.)  Class certification expert depositions were to be completed by March 11, 2016, and class certification motion briefing was scheduled to begin on April 25, 2016.  (See Dkt. No. 33.)

In the proposed SAC, Plaintiffs seek to add a new claim for breach of contract/breach of the implied covenant of good faith and fair dealing on behalf of the Caves and Kaminskis.  (See SAC (Dkt. No. 34 Ex. A) at ¶¶ 118-127.)  Plaintiffs also seek to plead a new allegation to support their claims, namely that, in connection with their loan modifications, Ocwen extended the amortization periods pursuant to which Plaintiffs' monthly loan payment amounts were calculated, and that Ocwen did not disclose that extension in the modification agreements.  (See id. at ¶¶ 56-58 (alleging that the amortization period for the Caves' loan was extended from 360 to 374 months), 75-77 (alleging that the amortization period for the Kaminskis' loan was extended from 360 to 480 months).)  Plaintiffs contend that the extension breached the terms of the Caves' and Kaminskis' respective Loan Modification Agreements.  (See id. at ¶¶ 57, 76, 119-127.)

Plaintiffs rely on Paragraph 8(b) of the Caves' Loan Modification Agreement and Paragraph 7(b) of the Kaminskis' Loan Modification Agreement, which state in relevant part that "[a]ll covenants, agreements, stipulations, and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified."  (See id. at ¶¶ 57, 76; see also FAC at Exs. B & C.)  On that basis, Plaintiffs contend that the failure to disclose the extended amortization

periods mandates that Plaintiffs' pre-modification amortization periods, allegedly provided in their original loan documents, remained in effect and that Ocwen's application of the longer amortization periods (which, in fact, lowered Plaintiffs' monthly payments) breached the Loan Modification Agreements.   (SAC at ¶¶ 56-58, 75-77, 121-123.)   Plaintiffs also seek to incorporate this new allegation into their UTPCPL and NJCFA claims.  (Id. at ¶¶ 99-111, 115.)

Third, the Caves and Kaminskis seek to represent a new putative class of nationwide borrowers asserting breach of contract claims (presumably under the law of all 50 states).  (Id. at ¶ 81.)  Plaintiffs define this new proposed class as follows:

> All homeowners within the United States whose mortgage loans have been serviced by Defendant Ocwen, and who have entered into a Loan Modification Agreement with Ocwen that contains a "Balloon Disclosure" provision which does not disclose the amount of the balloon payment that the borrower will owe at the end of the term of the loan, where Ocwen failed to disclose within the modification agreement that it had changed the amortization period as of the effective date of the modification.

(Id.)

Plaintiffs assert that the proposed amendment is based upon information they learned "shortly before the close of non-expert class-related discovery concerning Ocwen's previously unknown practice of extending amortization periods when effectuating in-house loan modifications."  (Pl. Br. at 4.)  They contend that they were unable to include allegations concerning extended amortization periods in their prior pleadings because Ocwen did not disclose this information until the depositions of its Rule 30(b)(6) witnesses near the end of non-expert class discovery.  (Id.)  Specifically, they point to a deposition that took place on October 2, 2015, of Ocwen's corporate designee Rashad Blanchard, who testified that, although the Kaminskis' loan was originally amortized over 360 months, "'[t]he Kaminski modification is over – [t]he amortization schedule is 480 months.'"  (Id. at 5 (quoting Pl.'s Mot. at Dkt. No. 34

Ex. B, Oct. 2, 2015 Dep. of Rashad Blanchard ("Blanchard Dep.") at 105:1-6, 17-18) (alteration in original).  Blanchard acknowledged that this 10-year extension of the amortization period is not stated in the Kaminskis' modification agreement.  (Blanchard Dep. at 114:7-12.)  Plaintiffs also point to the October 28, 2015 deposition of another Ocwen corporate designee, Max Nieves.  Nieves testified that the Caves' modified loan was amortized as though it was over a period of 374 months rather than 360 months, even though their modification agreement does not state that the amortization period was changed.  (Pl.'s Mot at Ex. C, Oct. 28, 2015 Dep. of Max Nieves, at 121-24.)  Plaintiffs assert that the proposed amendment clarifies their allegations concerning the manner in which Ocwen calculated monthly payments and balloon payments under Plaintiffs' loan modification agreements, i.e., by extending the amortization periods of their loans.

Ocwen takes a very different view of the discovery history.  It argues that Plaintiffs have had evidence to support their amortization allegations since March 2013, and had ample opportunity to explore it and seek amendment during the discovery period, but despite having inquiry notice in 2013 and filing two intervening complaints, Plaintiffs waited almost three years before bringing their Motion for Leave to Amend.  (See Def. Br. at 7-8.)  Ocwen notes that Plaintiffs do not dispute that they had possession of their Loan Modification Agreements and original loan documents before filing the original Cave I action.  Further, on March 15, 2013, Ocwen produced documents including Ocwen's Detail Transaction History and Loan Comment Log for the Caves' loan.  (Forbes Decl. at ¶ 14.)  Several pages of the Comment Log disclose the terms of the Caves' loan modification.  (See Forbes Decl. Ex. F (Cave Comment Log, dated September 8, 2011) at Ocwen001355, Ocwen001358-001359, Ocwen001361.)  The Log included a line-item identifying the "Amortization Term" as 374 months and the "Balloon Amortization" as 374 months.  (Id. at Ocwen001355, Ocwen001358-001359.)

Ocwen also points to the December 20, 2013 deposition of its Rule 30(b)(6) designee, Paul Myers, in <u>Cave I</u>.  (<u>See</u> Forbes Decl. at ¶ 15.)  During the deposition, Plaintiffs introduced the Caves' Comment Log as an exhibit and questioned Mr. Myers regarding the loan modification terms set forth therein as well as amortization generally.  (Forbes Decl. Ex. G (Dec. 20, 2013 Dep. of Paul Myers ("Myers Dep.")) at 52, 74-77, 79-80.  Ocwen notes that Myers testified at that time that the Caves' loan modification payments were "amortized over 374 months" (<u>id.</u> at 86) and that "their payment was amortized over 374 months because that's what it took in order to get their payment to be an affordable amount" (<u>id.</u> at 90).

Additionally, Ocwen argues that it produced documents on January 26, 2015, in connection with its Objections and Responses to Plaintiffs' First Request for Production of Documents.  (Forbes Decl. at ¶ 16.)  It asserts that those documents included an updated copy of Ocwen's Loan Comment Log for the Caves' loan, which disclosed the extended amortization period for their modified monthly payments.  (<u>Id.</u> Ex. H (Cave Updated Comment Log, dated December 17, 2014) at Ocwen001492, Ocwen001496-001497, Ocwen001504.)  After Plaintiffs added the Kaminskis as named plaintiffs, Ocwen produced documents on May 18, 2015, in connection with its Objections and Responses to Plaintiffs' Second Request for Production of Documents, which included the Kaminskis' Detail Transaction History and Comment Log, disclosing the extended amortization period applicable to the Kaminskis' modified monthly payments under their Loan Modification Agreement.  (Forbes Decl. Ex. I (Kaminski Comment Log dated February 12, 2015) at Ocwen005800.)  Ocwen notes that the Comment Log includes the loan modification terms with a line-item listing the loan term as 480 months and identifying the modification as a "STRAIGHT - 480 BALLOON."  (<u>Id.</u> at Ocwen005800.)  Accordingly, Ocwen argues that Plaintiffs had relevant information regarding their new theory as early as

March 2013, and, thereafter, had over two-and-one-half years to explore those subjects and seek leave to amend, but waited more than three months after the expiration of the class certification discovery period to file the pending motion.

Plaintiffs have submitted a Reply to Ocwen's Response in which they take issue with Ocwen's reliance upon the Caves' Detail Transaction History and Loan Comment Log.  They argue that the meanings of the line-items identifying the "Amortization Term: 374" and "Balloon Amortization: 374" (Forbes Decl. Ex. F at Ocwen001355, Ocwen001358-001359) are "far from clear as the number '374' is not modified by the word 'months,' which is missing from these items."  (Pl. Reply Br. at 7-8.)  They argue that the discussion of the amortization periods during the December 20, 2013 deposition of Paul Myers was limited to the Caves' individual loan and did not "hint that Ocwen routinely extended amortization terms by as much as ten years when implementing balloon modifications."  (Id. at 8.)  According to Plaintiffs,

> Ocwen did not produce a single document reflecting a ten-year extension of an amortization period until May 18, 2015, when it turned over the Detail Transaction History and Comment Log for the Kaminskis' loan.  Even then, the evidence was contradictory and confusing: the Kaminski Comment Log cryptically stated "STRAIGHT – **480** BALLOON," but also said "BALLOON TERM: **366**."  Forbes Decl. Ex. I, at Ocwen005800 (emphasis added).  Until these line items were explained by Ocwen's Rule 30(b)(6) witnesses during their depositions on October 2 and 28, 2015, Plaintiffs had no way to decipher these vague Comment Log entries.  See Lechtzin Dec. Exs. B and C (Dkt. No. 34). Moreover, it was not until the recent depositions of Ocwen's Rule 30(b)(6) witnesses that Plaintiffs learned that the extended amortization periods of the Caves' and the Kaminskis' loans were not isolated occurrences, but rather, were typical of Ocwen's balloon modifications.  The three-month interval between the Rule 30(b)(6) depositions and the instant motion for leave to amend is hardly an undue delay.  More importantly, Ocwen cannot show any prejudice resulting from such delay.

(Id. (emphasis in original).)

## II.    ANALYSIS

Federal Rule of Civil Procedure 15(a) provides that "[t]he court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a).  "A district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party."  Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005).

    a.    Undue Delay

While the passage of time alone is an insufficient ground to deny leave to amend, "'at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party.'"  Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (quoting Adams v. Gould Inc., 739 F.2d 858, 868 (3d Cir. 1984)).  "Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend."  Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 266 (3d Cir. 2008) (citing Cureton, 252 F.3d at 273).  "Thus, while bearing in mind the liberal pleading philosophy of the federal rules, the question of undue delay requires that we focus on the movant's reasons for not amending sooner."  Cureton, 252 F.3d at 273 (citations omitted).

In Cureton, the United States Court of Appeals for the Third Circuit upheld the district court's denial of a motion for leave to file a second amended complaint when the motion was filed three years after the original complaint and was based on factual information known to the plaintiff for at least two and a half years.  Id. at 273-74; see also Lorenz v. CSX Corp., 1 F.3d

1406, 1414 (3d Cir. 1993) (upholding the district court's denial of a motion for leave to amend filed three years after the original complaint and almost two years after the complaint was amended for a second time, where most of the operative facts were available to the plaintiff when the original complaint was filed, and all of the facts were available when the second amended complaint was filed).   Conversely, the Third Circuit has overruled the denial of a motion for leave to amend when the delay has been less than one year.  See Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006) (involving a delay of eleven months); Riley v. Taylor, 62 F.3d 86, 90-91 (3d Cir. 1995) (involving a delay of between six months and one year); Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990) (involving a delay of between eight and nine months).

Here, the delay can be measured from several points:  (1) from the December 20, 2013 deposition of Ocwen's Rule 30(b)(6) designee, Paul Myers, who testified that the Caves' loan modification payments were "amortized over 374 months" (Myers Dep. at 86) and that "their payment was amortized over 374 months because that's what it took in order to get their payment to be an affordable amount" (id. at 90); (2) from January 26, 2015, when Ocwen produced an updated copy of the Caves' Loan Comment Log, which disclosed the extended amortization period for their modified monthly payments (id. Ex. H (Cave Updated Comment Log, dated December 17, 2014) at Ocwen001492, Ocwen001496-001497, Ocwen001504); (3) from May 18, 2015, when Ocwen produced the Kaminskis' Detail Transaction History and Comment Log, disclosing the extended amortization period applicable to the Kaminskis' modified monthly payments under their Loan Modification Agreement, which stated the loan term as 480 months (Forbes Decl. Ex. I (Kaminski Comment Log dated February 12, 2015) at

Ocwen005800); or (4) from October 2015, when Ocwen's Rule 30(b)(6) witnesses testified that Ocwen routinely extended amortization periods.

We conclude that, while Plaintiffs too easily dismiss the implication of the information they obtained in the December 20, 2013 Myers Deposition about the Caves' loan modification, they are entitled to the benefit of the doubt on the larger issue of when they learned of the basis for a class claim for breach of contract based on the extension of amortization dates.  Having already received in production Ocwen's Detail Transaction History and Loan Comment Log of the Caves' loan showing that the loan had been modified to an amortization period of "374," Myers confirmed that the principal on the Cave loan was deferred under the modification but the loan term was not.  (Myers Dep. at 75:10-17, 79:2-4 ("Q.  Was any principal deferred under this modification? . . . A.  Yes.  There was a balloon in this loan and the balloon amount was [$]93,524.46 had the borrower made all of her payments. . . .  Q.  Do you know if the term of the Cave's loan was extended by this modification agreement?  A.  It was not.").)  While Plaintiffs' modification documents allegedly did not disclose the amount of the balloon payment, and Ocwen did not provide them an amortization table in their loan documents, it does not follow that they could not have known that the amortization period of the loan had changed until the most recent Rule 30(b)(6) deposition in 2015.  Indeed, Plaintiffs' counsel asked Myers about this at the December 2013 deposition, and he instructed them how to go about calculating their amortization schedule:

> Q.  Other than receiving an amortization table, how would the Caves know for each month during the term of their loan how much of their payment would be allocated to principal and how much would be allocated to interest?
>
> A.  There are countless software [sic].  You could go on to any app now probably for your phone to which you could plug in and it would create an amortization schedule for you.  It seems rather basic.

(Id. at 77:23-78:7.)  Had they done so, they could have concluded that Plaintiffs' amortization period had been modified, despite their claim that they could not have known of this change until recently.

Nonetheless, Plaintiffs' "reasons for not amending sooner" to allege a class-wide claim based on the failure to disclose the amortization period modification are substantial.  They point to the following facts: (1) the Detail Transaction History and Loan Comment Log did not identify the meaning of "Amortization Term:  374" and "Balloon Amortization:  374", and the number 374 was not modified by the word "months"; (2) the discussion of the amortization periods during the December 20, 2013 Myers Deposition was limited to the Caves' individual loan; (3) the Detail Transaction History and Comment Log for the Kaminskis' loan stated "STRAIGHT – 480 BALLOON," but also stated — inconsistently — "BALLOON TERM: 366"; (4) these items were not explained by Ocwen's Rule 30(b)(6) witnesses during their depositions on October 2 and 28, 2015; and (5) they didn't learn that Ocwen routinely extended amortization periods until the further deposition of Rule 30(b)(6) designees approximately three months before filing the Motion for Leave to Amend.  Based on this record, we conclude that the delay in seeking leave to amend to assert the class claim was not undue.

b.      Futility

'"Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'"  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted); see also Muchler v. Greenwald, 624 F. App'x 794, 799 (3d Cir. 2015). "[T]he district court should apply 'the same standard of legal sufficiency as applies under Rule 12(b)(6) in assessing futility.'"  Muchler, 624 F. App'x at 799 (quoting Shane v. Fauver, 213 F.3d 113, 116 (3d Cir. 2000)); see also Great W. Mining & Mineral Co. v. Fox Rothschild LLP,

615 F.3d 159, 175 (3d Cir. 2010) ("The standard for assessing futility is the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6)." (quotation omitted)).   Accordingly, a proposed amendment is futile where it fails to set forth sufficient factual allegations to support a plausible right to recovery – a right to relief that rises above the speculative or even a conceivable level.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

        1.        The breach of contract claim.

Ocwen argues that the proposed breach of contract/breach of duty of good faith and fair dealing claim is implausible under Pennsylvania law (applicable to the Caves' claim) and New Jersey law (applicable to the Kaminskis' claim) because the claims rest on the presumption that a provision of Plaintiffs' original loan documents dictates the applicable pre-modification amortization period; when, in fact, no such amortization period term exists in Plaintiffs' Notes or Mortgages.  Specifically, Ocwen argues that the Caves' and Kaminskis' Notes and Mortgages

> do not contain any express term or provision setting forth the amortization periods by which their pre-modification monthly payments were allocated between principal and interest.  See Cave Note; Cave Mortgage; Kaminski Note; Kaminski Mortgage.  Plaintiffs' Notes do not set forth, address, or mention any specifically-applicable or contractually-governing amortization period.  See Cave Note, at 1-2; Kaminski Note, at 1-2.   Instead, the relevant provisions of Plaintiffs' Notes contain the same material terms as the Loan Modification Agreements, including the unpaid principal balances, interest rates, maturity dates, and monthly principal and interest payment amounts.  See Cave Note, at 1-2; Kaminski Note, at 1-2.[1]

---

[1]The Notes, like the Loan Modification Agreements, require the Caves and Kaminskis to make monthly payments of principal and interest in a specifically-disclosed amount and to pay all amounts due on their loan by the disclosed maturity date.  Specifically, the Caves' Note provides that:

> I will make my monthly payments on the first day of each month beginning on January 1, 2006.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due

(Def. Br. at 15.)  Ocwen notes that the payment provisions in Plaintiffs' Notes make no mention of an amortization period by which Plaintiffs' monthly payments were to be calculated; they simply require that Plaintiffs pay all amounts due under the loans by the maturity dates.  (See Cave Note, at 1; Kaminski Note, at 1.)  The Loan Modification Agreements, Ocwen asserts, "differ only [in] that they also identify the existence of a future balloon payment due at the maturity date."  (Def. Br. at 16 (citing Cave Loan Modification Agreement, at ¶ 5, & p. 3; Kaminski Loan Modification Agreement, at ¶ 3, & p. 3).)

---

> date and will be applied to interest before Principal.  If, on December 1, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

(Forbes Decl. Ex. A (Cave Note), at ¶ 3(A).)  The Caves' Loan Modification similarly states, in relevant part, that:

> You Promise to make payments of principal and interest on the same day of each succeeding month until 12/1/35, at which time a final balloon payment in an amount equal to all remaining amounts under the Note and Modification will be due.

(FAC Ex. B (Cave Loan Modification Agreement) at ¶ 5.)  The Kaminskis' Note provides that:

> I will make my monthly payment on the 01 day of each month beginning on Apr. 01, 2006.  I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest it will be applied to interest before Principal.  If, on March 1st, 2036, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

(Forbes Decl. Ex. C (Kaminski Note), at ¶ 3.)  The Kaminskis' Loan Modification similarly states, in relevant part, that:

> [Y]ou will commence payments of principal and interest in the amount of $1,143.32 on May 1, 2011 and continuing on the 1st day of each succeeding month until 9/1/2036, at which time a final balloon payment in an amount equal to all remaining amounts under the Note and Modification will be due.

(FAC Ex. C (Kaminski Loan Modification Agreement) at ¶ 3.)

Because the amortization period was not an express term of Plaintiffs' original loan documents, Ocwen asserts that any claim based upon a contractual duty not to modify that period cannot support a breach of contract claim under Plaintiffs' proposed theory.  (<u>Id.</u> at 17 (citing <u>Andrichyn v. TD Bank, N.A.</u>, 93 F. Supp. 3d 375, 384-86 (E.D. Pa. 2015) (dismissing breach of contract claim under Pennsylvania law where plaintiff failed to identify a specific contractual duty breached by defendant); <u>Skypala v. Mortg. Elec. Registration Sys., Inc.</u>, 655 F. Supp. 2d 451, 459-60 (D.N.J. 2009) (dismissing breach of contract claim under New Jersey law where the complaint "does not identify the provisions Plaintiff asserts were breached"); <u>O'Donnell v. Bank of Am.</u>, Civ. A. No. 07-4500, 2010 WL 934153, at *1 (N.D. Cal. Mar. 15, 2010) (noting dismissal of breach of contract claim and rejecting argument that loan documents required application of payments on a fully-amortizing basis)).  Additionally, to the extent the claim is styled as one for breach of the implied covenant of good faith and fair dealing, Ocwen contends that Plaintiffs' claim still fails because "'[a] claim for breach of the implied covenant cannot proceed if it bears no relationship to the express terms of the contract.'"  (<u>Id.</u> (alteration in original) (quoting <u>Andrichyn</u>, 93 F. Supp. 3d at 387; and citing <u>Pigford v. Residential Credit Solutions, Inc.</u>, Civ. A. No. 13-5703, 2015 WL 7345751, at *6 (D.N.J. Nov. 19, 2015) (dismissing breach of implied covenant claim were plaintiffs failed to allege any conduct violating the terms of the alleged forbearance agreement)).  Because the extension of the amortization period did not change the loan maturity date, the loan term, or the borrower's obligation to pay all amounts due by the loan maturity date — but only reduced the current monthly payment amounts in favor of a balloon payment at the end of the loan term, which was all disclosed in Plaintiffs' Notes and their Loan Modification Agreements — Ocwen argues that

the SAC fails to identify an express contractual amortization term that Ocwen could breached, which necessarily renders the proposed amendment futile.

Plaintiffs respond that Ocwen's focus on the fact that the underlying mortgage documents do not expressly state an amortization period is "off the mark." (Pl. Reply at 9.) They contend that (1) "the full amortization of the Caves' and the Kaminskis' loans over a period of 360 months is an express term under the original loan documents"; (2) "the Caves' and the Kaminskis' original promissory notes and mortgages do not contain balloon payment provisions"; and (3) "both loans provide for repayment of the entire principal amount over a period of exactly 360 months at the stated rate of interest." (Id. at 9-10.) According to Plaintiffs, it is a

> mathematical imperative that, under the terms of Plaintiffs' original loan documents, their payments must be fully amortized over the 360-month terms of their loans. In other words, under Plaintiffs' original loan documents there is but one way to calculate the amortization – i.e., full amortization over 360 months.
> By comparison, Ocwen's in-house loan modification agreements – unlike Plaintiffs' original loans – contain balloon payment provisions. And, unlike Plaintiffs' original mortgage documents, because neither the dollar amount for the balloon payment is specified, nor is a method for calculating the balloon payment stated, there are limitless ways that Ocwen could determine the amount of the balloon due at the end of the loan. And, the balloon payments could include amounts representing principal, interest, fees and charges, or anything else Ocwen decides to heap on a borrower who has had the misfortune of entering into such modification agreements. As a result, there was no way for Plaintiffs and the Class to determine that the amortization terms of their loans were extended by Ocwen by as much as ten years.

(Pl. Br. at 10 (internal citations and footnotes omitted).) Since Ocwen does not dispute that Plaintiffs' loan modification agreements do not include any disclosures concerning, and did not by their terms amend, the amortization period of the modified loans, Plaintiffs argue that when Ocwen changed the amortization periods of the Caves' and the Kaminskis' loans to 374 months and 460 months, respectively, Ocwen breached the express provision of their loan modification

16

agreements that "[a]ll covenants, agreements, stipulations, and conditions in your Note and Mortgage will remain in full force and effect, except as herein modified," because the original loan documents mandated full amortization over 360 months.  (Id. at 9 (citing SAC at ¶¶ 57, 76, 122).)

We conclude that Plaintiffs fail to state a plausible claim for breach of contract based upon the failure to disclose the new amortization period.  Plaintiffs' entire argument is grounded on an incorrect premise, namely their assertion that "the full amortization of the Caves' and the Kaminskis' loans over a period of 360 months is an express term under the original loan documents."  (Id. at 9.)  Plaintiffs fail to cite to any contract language in their original Notes or Mortgages containing such a provision setting forth stated amortization periods upon which their breach of contract claim purports to rely.  Indeed, Plaintiffs' original loan documents do **not** expressly state or imply that payment of all monthly payments will result in the satisfaction of the total principal balances; however, the documents **do** specify that if Plaintiffs still owe amounts due at the loan's maturity date, Plaintiffs "will pay those amounts in full."  (Forbes Decl. Ex. A (Cave Note) at 1; Ex. C (Kaminski Note) at 1.)

Ocwen is correct when it asserts that, if 360-month amortization periods are implied terms in Plaintiffs' original loan documents (by virtue of the lack of a balloon payment provisions therein), then the extension or modification of those periods is equally implicit in the loan modification agreements by virtue of the existence of the new balloon payment provisions. If a loan's monthly payment is lowered, the term of the loan is not extended, and a balloon payment provision is added, the correct "mathematical imperative" is that the amortization period of the loan has to change.  It is not reasonable, and is thus implausible, for Plaintiffs to plead reliance on a purportedly implied amortization period term in their original loan

documents, but then ignore the equally implicit modification of the amortization period effected by the modification agreements for the purpose of lowering their monthly payments.

Perhaps acknowledging this problem, Plaintiffs contend in the alternative that "even if (arguendo) the full amortization over a term of 360 months were not expressly stated in Plaintiffs' original loan documents, Ocwen's failure to abide by the original 360-month amortization period constitutes a breach of the implied covenant of good faith and fair dealing." (Pl. Reply at 11.)   Plaintiffs contend that "the manner in which a borrower's payments are allocated to principal and interest is an essential term of the loan," and that a homeowner has an expectation "based upon the loan documents, that making 30 years' worth of monthly payments will fully repay the principal amount of the loan by the loan's maturity date and extinguish the debt." (Id. at 12.)

This argument is also implausible under Pennsylvania and New Jersey law.   Under Pennsylvania law "a duty of good faith and fair dealing in a breach of contract claim must always be grounded in a specific provision of a contract."   Nationwide Ins. Indep. Contractors Ass'n, Inc. v. Nationwide Mut. Ins. Co., 518 F. App'x 58, 62 (3d Cir. 2013) (citing Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91 (3d Cir. 2000) (noting that a claim for breach of the duty of good faith and fair dealing must not be "divorced from the specific clauses of the contract")); see also Goldfish Shipping, S.A. v. HSH Nordbank AG, Civ. A. No. 07-3518, 2008 WL 4809410, at *7 n.4 (E.D. Pa. Nov. 3, 2008) (Padova, J.) (noting that under Pennsylvania law "there is no independent claim for breach of the implied covenant of good faith and fair dealing. Thus, a claim for a breach of the covenant of good faith and fair dealing is simply a breach of contract claim, for which the usual elements of a breach of contract claim must be pled.") (internal citations omitted).   In New Jersey, courts "must consider the express

language of the contract as well as any course of dealing between the parties," <u>Cargill Glob.</u>
<u>Trading v. Applied Dev. Co.</u>, 706 F. Supp. 2d 563, 579-80 (D.N.J. 2010) (citing 23 Richard A.
Lord, Williston on Contracts § 63:22 (4th ed. 2009)), and the duty of good faith and fair dealing
"is to be interpreted narrowly, lest it 'become an all-embracing statement of the parties'
obligations under contract law, imposing unintended obligations upon parties and destroying the
mutual benefits created by legally binding agreements.'"  <u>Id.</u> at 580 (quoting <u>Brunswick Hills</u>
<u>Racquet Club, Inc. v. Route 18 Shopping Ctr. Assoc.</u>, 864 A.2d 387, 399 (N.J. 2005) (quoting
<u>Northview Motors, Inc. v. Chrysler Motors Corp.</u>, 227 F.3d 78, 92 (3d Cir. 2000))).

Accordingly, we conclude that because (1) there is no specific provision in the original
contracts requiring full amortization of the loans over the original loan periods, (2) the
modification agreements changed the monthly payments without extending the term of the loans,
and (3) the modification agreements added the balloon payment provisions, Plaintiffs' good faith
and fair dealing claim based upon an assertion that the original amortization periods still
governed their loans is implausible.  This interpretation would read into the original contracts a
term that isn't there and would destroy the mutual benefits created by the modification, namely
reduced monthly payments over the loan term coupled with the balloon payment, in exchange for
Ocwen's forbearance on collecting the loan as originally agreed.  It is implausible to expect that
Plaintiffs retained the right to enforce the original amortization period when they accepted the
modification that reduced their current payments.[2]

---

[2]  We note that Plaintiffs also rely in the Reply Brief on material that is not pled in the
SAC, namely amortization tables appended to Plaintiffs' Expert Report to show that the change
in the amortization period caused them to pay additional interest on their loans. (<u>See</u> Pl. Reply
Br. at 2, 2 n.2, 13 and Exs. 1 and 2 to Supp. Decl. of Eric Lechtzin.)  Were the issue presented as
a motion to dismiss, rather than a motion for leave to amend, we would have discretion to either
convert such a motion to dismiss into a motion for summary judgment, or to ignore the matters
presented outside the pleadings and continue to treat the filing as a motion to dismiss.  <u>See</u>

2.      The UTPCPL claim.

We previously rejected Ocwen's arguments to dismiss the UTPCPL claim in the CAC, which is based upon the failure to disclose the amount of the balloon payment at the end of the loan term.[3]  Abraham v. Ocwen Loan Servicing, LLC, Civ. A. No. 14-4977, 2014 WL 5795600 (E.D. Pa. Nov. 7, 2014).  We held that Plaintiffs asserted a plausible UTPCPL claim, alleging that Ocwen engaged in deceptive conduct by failing to estimate the amount of the balloon payments or explain how the payments would be calculated.  Id. at *4.  The proposed SAC restates Plaintiffs' original theory of the UTPCPL claim and adds a new allegation that "unbeknownst to Plaintiffs and the Class, as of the effective date of their loan modifications, Ocwen changed the amortization terms of their loans without disclosing this material change in the terms of their loans."  (SAC at ¶ 99.)  As a result of this undisclosed change, Plaintiffs allege that the provision in the loan modification agreements guaranteeing that all the terms in "your

---

Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992) ("A trial judge has the discretion to consider evidence outside the complaint in ruling on motions to dismiss."); see also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion (3d ed. 2015) ("As the language of the rule suggests, federal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.").  In this context, we choose to ignore this material.  Whether Plaintiffs suffered damages from an alleged breach in the form of added interest expense is a separate question from whether there is a contractual duty that could have been breached.

[3] The UTCPCL prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."  73 Pa. Stat. Ann. § 201–3. To state a plausible claim under the UTPCPL, a complaint must allege that: "(1) [plaintiffs] purchased or leased goods or services primarily for a personal, family, or household purpose; (2) [plaintiffs] suffered an ascertainable loss of money or property; and (3) the loss occurred as a result of the use or employment by a person of a method, act, or practice declared unlawful by the UTPCPL."  Baynes v. George E. Mason Funeral Home, Inc., Civ. A. No. 09-153, 2011 WL 2181469, at *4 (W.D. Pa. June 2, 2011) (citing 73 Pa. Stat. Ann. § 201–9.2(a)).  The Complaint must also allege that the plaintiffs justifiably relied on the deceptive conduct.  See Hunt v. U.S. Tobacco Co., 538 F.3d 217, 221-22 (3d Cir. 2008) (stating that plaintiffs pursuing a claim under the UTPCPL must prove justifiable reliance).

Note and Mortgages will remain in full force and effect, except as herein modified" is false, misleading, and deceptive.  (Id. at ¶ 100.)

Ocwen argues that the UTPCPL claim asserted in the SAC is futile because it is also premised upon the breach of a contract provision that does not exist; as there was no amortization period specified in the original loan documents, the change of the amortization period to permit the lower monthly payments and resulting balloon payment cannot constitute a violation of UTPCPL.  (See Def. Br. at 19 (citing Pellegrino v. State Farm Fire & Cas. Co., 568 F. App'x 129, 132 (3d Cir. 2014) (dismissing UTPCPL claim and identical breach of contract claim for failure to allege a breach of the relevant contract)).)  Ocwen also argues that the new theory of the claim is barred by the economic loss doctrine.

We reject Ocwen's arguments.  First, unlike the proposed SAC's breach of contract claim — where liability is premised on a specific, non-existent contract term — the new version of the UTCPCL claim merely incorporates an additional factual allegation in support of the previously pleaded theory of the claim.  Having previously held that the claim was plausible because it alleged deceptive conduct that was separate and distinct from a breach of contract, namely the failure "to disclose the amount of the balloon payment or a method by which it will be calculated," Abraham, 2014 WL 5795600, at *4, the addition of a more specific explanation of what was allegedly not disclosed — the amortization period — cannot detract from the claim's plausibility.

Second, in our prior holding that the economic loss doctrine[4] did not bar the UTPCPL claim in the CAC, we explained that the claim did "not flow from the contractual obligation

---

[4]  The economic loss doctrine "'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'"  Werwinski v. Ford Motor Co., 286 F.3d 661, 671 (3d Cir. 2002) (quoting Duquesne Light Co. v. Westinghouse Elec. Corp., 66

contained in the language of the modification — i.e., a failure by [the loan servicer] to make the loan on the terms provided in the agreement—but rather [flowed] from the information [the loan servicer] failed to provide the [p]laintiffs before they entered in the agreements." Id. at *7.  We further observed that Plaintiffs' alleged damages arising from the asserted UTPCPL violation were not contract damages but were, instead, damages arising out of the loan servicer's failure to disclose the balloon payment that would result from its adherence to the contract.  Id.  Thus, we concluded that the claim in the CAC was not a situation in which the Plaintiffs (1) alleged in their UTPCPL claim that they suffered damages as a result of a contractual breach, and (2) sought breach of contract damages in connection with that claim.  Id.

The same rationale applies more strongly to the new allegation.  Since there are no amortization period terms in the Plaintiffs' Notes and Mortgages, the undisclosed alteration of the periods cannot result in contract damages implicating the economic loss doctrine.

3.      The NJCFA claim.[5]

"To state a claim under the NJCFA, a plaintiff must allege that the defendant engaged in an unlawful practice that caused an ascertainable loss to the plaintiff."  Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) (citing Cox v. Sears Roebuck & Co., 647 A.2d 454, 462-465 (N.J. 1994)).  The NJCFA defines "unlawful practice" as:

The act, use or employment by any person of any unconscionable commercial

---

F.3d 604, 618 (3d Cir. 1995)).  Consequently, the doctrine limits plaintiffs to their contract claims "'when loss of the benefit of a bargain is the plaintiff[s'] sole loss.'"  Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 104 (3d Cir. 2001) (quoting Duquesne Light, 66 F.3d at 618).  To avoid application of the economic loss doctrine, plaintiffs must articulate "harm that is distinct from the disappointed expectations evolving solely from an agreement."  Sunburst Paper, LLC v. Keating Fibre Int'l, Inc., Civ. A. No. 06-3959, 2006 WL 3097771, at *3 n.3 (E.D. Pa. Oct. 30, 2006) (citation omitted).

[5] This claim was not included in the original CAC.  It first appeared in the FAC, which Ocwen stipulated the Plaintiffs could file without leave of court.  Accordingly, we have not before addressed the plausibility of the claim.

> practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise....

N.J.S.A. § 56:8-2. "'Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations.'" Frederico, 507 F.3d at 202 (quoting Cox, 647 A.2d at 462).

> When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act.  However, when the alleged consumer fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud.

Cox, 647 A.2d at 462 (internal citations omitted).  In other words, to establish a NJCFA claim based upon an omission, "'plaintiff must show that defendant (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment.'"  Harnish v. Widener Univ. Sch. of Law, 931 F. Supp. 2d 641, 652 (D.N.J. 2013) (quoting Judge v. Blackfin Yacht Corp., 815 A.2d 537, 541 (N.J. Super. Ct. App. Div. 2003)).  Because this definition can include a simple breach of contract, but the New Jersey Legislature provided for the award of treble damages for the statutory claim, the New Jersey Supreme Court has held that "the Legislature must have intended that substantial aggravating circumstances be present in addition to the breach." Cox, 647 A.2d at 462.

Ocwen argues that the SAC's iteration of the NJCFA claim is futile because the statute does not support a cause of action based on a mere breach of contract absent substantial aggravating factors, and the allegations concerning the change in the amortization period are based solely on allegations of breach of contract.  (Def. Br. at 19.)  We reject this argument. Again, we have previously held that the Pennsylvania claim was plausible because it alleged deceptive conduct that was separate and distinct from a breach of contract, namely the failure "to

disclose the amount of the balloon payment or a method by which it will be calculated." Abraham, 2014 WL 5795600 at *4. This same conduct satisfies Plaintiffs' burden to allege the elements of a plausible NJCFA claim, namely that Ocwen (1) knowingly concealed (2) a material fact (3) with the intention that plaintiff rely upon the concealment. The additional allegations concerning the omission of the change to the amortization period, coupled with the alleged failure to disclose the amount of the balloon payment or otherwise explain how it was to be calculated, constitutes a plausible claim of a substantial aggravating factor.

     c.     Prejudice

The final reason that a court may deny leave to amend is prejudice to the non-moving party. Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989); Universal Computer Consulting, Inc. v. Pitcairn Enters., Inc., Civ. A. No. 03-2398, 2005 WL 1213884, at *4 (E.D. Pa. May 18, 2005). "The issue of prejudice requires that we focus on the hardship to the defendants if the amendment were permitted." Cureton, 252 F.3d at 273 (citation omitted). "But the non-moving party must do more than merely claim prejudice." Bechtel, 886 F.2d at 652. To show prejudice, "the defendant must establish that it would be 'unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered' had the allegations in the amended complaint been timely made." Pegasus Int'l, Inc. v. Crescent Mfg. Co., Civ. A. No. 06-2943, 2007 WL 1030457, at *5 (E.D. Pa. Apr. 2, 2007) (quoting Arthur, 434 F.3d at 206). Where a proposed amended complaint adds substantive allegations against a defendant or adds parties related to the defendant, and "'[t]he evidence required to meet these new allegations is substantially similar to that which was originally required,'" prejudice does not exist. Id., 2007 WL 1030457, at *5 (alteration in original) (quoting Dole, 921 F.2d at 488). Neither will the need for additional discovery due to the amendment, without more, demonstrate prejudice the non-

moving party.  Dole, 921 F.2d at 488; but see Cureton, 252 F.3d at 273 (considering "whether allowing an amendment would result in additional discovery, cost, and preparation to defend against new facts or new theories").  The non-moving party bears the burden of demonstrating prejudice.  AMS Constr. Co. v. Reliance Ins. Co., Civ. A. No. 04-2097, 2006 WL 1967336, at *3 (E.D. Pa. July 12, 2006) (citation omitted).

We conclude that Ocwen has not shown that permitting Plaintiffs to amend their UPTCPL and NJCFA claims will cause prejudice.  In both instances, Plaintiffs merely seek to supplement the factual allegations underpinning previously stated claims.  Finally, any assertion of prejudice arising from the Plaintiffs' attempt to add the nation-wide class to pursue the breach of contract claim is insubstantial since we determine that the attempt to add that cause of action is futile.

## III.    CONCLUSION

We grant Plaintiffs leave to amend their complaint only to the extent that they seek to supplement the allegations underpinning the UTPCPL claim (Count I) and the NJCFA claim (Count III).  We deny leave to amend to add the proposed breach of contract claim because the proposed claim is futile.  We also deny leave to amend to add a nation-wide class to pursue the futile breach of contract claim.  An appropriate Order will be entered.

BY THE COURT:


_____/s/ John R. Padova___
John R. Padova, J.