IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA A. ABRAHAM | : | CIVIL ACTION |
| v. | : | |
| OCWEN LOAN SERVICING, LLC | : | No. 14-4977 |

**MEMORANDUM**

**Padova, J.**                                                                                                                          **May 8, 2019**

      Plaintiff Lisa Abraham asserts a single claim against Defendant Ocwen Loan Servicing, LLC ("Ocwen") pursuant to the Unfair Trade Practice and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-3 et seq. The claim arises out of an in-house loan modification agreement that Abraham entered into with Ocwen in connection with her home mortgage. Specifically, Abraham contends that the loan modification agreement contained a "Balloon Disclosure" provision that did not disclose the amount of the balloon payment that she would pay at the conclusion of the loan period. Ocwen has filed a Motion for Summary Judgment, to which Abraham has filed no response. For the following reasons, we grant Ocwen's Motion and enter judgment in Ocwen's favor.

**I.    BACKGROUND**

      The undisputed facts in the summary judgment record are as follows. Lisa Abraham owns a home in Fleetwood, Pennsylvania. (Dep. of Lisa A. Abraham ("Abraham Tr."), Ex. A to Forbes Decl., at 42-44.) On June 18, 2007, Abraham refinanced her home with a 30-year Fixed Rate Stepped Payment Note ("30-year Note") in the amount of $263,500.00, which had an 8.59% interest rate and a maturity date of July 1, 2037. (Abraham Tr. at 148-54; 30-year Note, Ex. B to Forbes Decl., ¶¶ 1, 2, 3(A).) Under the terms of the 30-year Note, Abraham was to pay monthly

principal and interest in the amount of $1,949.76 for the first 120 months, after which the monthly payment would increase to $2,196.79. (Abraham Tr. at 154-55; 30-year Note ¶ 3(b).) Abraham secured the 30-year Note with a mortgage on her Fleetwood property. (Mortgage, Ex. C to Forbes Decl.)

Sometime before 2010, Abraham fell behind on her loan payments. (Abraham Tr. at 169-71.) As a result, Abraham entered into a loan modification agreement ("2010 Loan Modification") with Ocwen, which was effective on June 18, 2010. (See 2010 Loan Modification, Ex. E to Forbes Decl.) Under the terms of this agreement, Ocwen increased the principal amount of her loan to $322,838.81; the annual interest rate was reduced to a fixed rate of 6.4%; and Abraham's new monthly principal and interest payment was $1,867.13. (Id. ¶¶ 3(a)-(b), (d).) The 2010 Loan Modification further specified that the "loan modification is amortized as if the repayment period was 480 months" and stated that Abraham "will have a balloon payment due at maturity on July 1, 2037." (Id. ¶ 3(e).)

In February 2011, Ms. Abraham suffered a stroke, again fell behind on her monthly loan payments, and was facing potential foreclosure. (Abraham Tr. at 210-12.) By letter dated November 23, 2012, Ocwen offered Abraham an in-house loan modification ("2012 Modification Agreement"), and Abraham accepted the 2012 Modification Agreement in December of 2012. (2012 Modification Agreement, Ex. I to Forbes Decl.; Def.'s Statement of Material Facts ¶ 11.) The 2012 Modification Agreement reduced the principal balance of Abraham's loan to $236,040.80; reduced her monthly principal and interest payments to $714.79; and lowered her interest rate to 2.0%. (2012 Modification Agreement ¶¶ (1)-(2), (4).) Because the total payoff amount of Abraham's loan prior to the 2012 modification was $327,090.29, Ocwen forgave approximately $91,000 of that debt in order to reduce the principal amount of the 2012 modified

2

loan to just $236,040.80. (Dep. of Rashad Blanchard ("Blanchard Tr."), Ex. F to Forbes Decl., at 198-99.) The 2012 Modification Agreement applied the same amortization period as the 2010 Loan Modification – 480 months, and the maturity date remained July 1, 2037. (Id. at 229-31; 2012 Modification Agreement ¶ 5.)

The "Balloon Disclosure" provision in the 2012 Modification Agreement provides:

> The loan modification for which you have applied contains a balloon provision. This means that even if you make all payments full and on time, the loan will not be paid in full by the final payment date. A single balloon payment will be due and payable in full on 7/1/37, provided that all payments are made in accordance with the loan terms and the interest rate does not change for the entire loan term.

(2012 Modification Agreement at 4.) The 2012 Modification Agreement, including the Balloon Disclosure, does not state the estimated amount of the balloon payment that will be due on the maturity date or set forth an amortization schedule. (See id. at 2-4.) The 2012 Modification Agreement states that the balloon payment that will be due will be in an "amount equal to all remaining amounts under the Note and Modification." (Id. ¶ 5.) That amount was contingent upon Abraham's payment history between the date she entered the 2012 Modification Agreement and the maturity date. (See Max Nieves Decl. ¶¶ 23-29.) For instance, the payment would increase if Abraham failed to make full and timely monthly payments and incurred late fees or other charges. (Id. ¶ 27.) Ocwen employees are nevertheless trained to provide borrowers with expected balloon payoff amounts and amortization schedules if requested. (Id. ¶¶ 32, 34, 37.) Abraham has not had to pay the balloon payment that will be due under the 2012 Modification Agreement in 2037. (Abraham Tr. at 323; 2012 Modification Agreement at 4.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

3

56(a). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. In ruling on a summary judgment motion, we consider "the facts and draw all reasonable inferences in the light most favorable to . . . the party who oppose[s] summary judgment." Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)). If a reasonable fact finder could find in the nonmovant's favor, summary judgment may not be granted. Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 130 (3d Cir. 2002) (citation omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record,] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. "'While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must

4

be more than a scintilla.'" Galli v. New Jersey Meadowlands Comm'n, 490 F.3d 265, 270 (3d Cir. 2007) (quoting Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005)).

## III. DISCUSSION

In her Second Amended Complaint, Abraham asserts a single claim: that Ocwen violated the UTPCPL by failing to disclose the amount of the balloon payment that would be due at the maturity date of her loan as modified by the 2012 Modification Agreement. In its Motion for Summary Judgment, Ocwen argues, inter alia, that the undisputed facts in the summary judgment record establish that Abraham suffered no ascertainable loss of money or property as a result of its alleged nondisclosure and that judgment should therefore be entered in its favor.

The UTPCPL provides that:

> [a]ny person who purchases or leases goods or services . . . and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful [under the statute] may bring a private cause of action to recover actual damage or one hundred dollars ($100), whichever is greater.

73 Pa. Stat. § 201–9.2(a). The statute is therefore clear that "[t]o maintain a private right of action under [the UTPCPL], a plaintiff must demonstrate . . . [an] 'ascertainable loss of money or property, real or personal.'" Kaymark v. Bank of Am., N.A., 783 F.3d 168, 180 (3d Cir. 2015) (quoting 73 Pa. Stat. § 201-9.2(a)), abrogated on other grounds by 139 S. Ct. 1029 (2019). In other words, "actual loss of money or property must have occurred to state a cognizable UTPCPL claim." Benner v. Bank of Am., N.A., 917 F. Supp. 2d 338, 360 (E.D. Pa. 2013) (citations omitted). This is true whether the plaintiff seeks actual damages or only statutory damages. Williams v. Empire Funding Corp., 227 F.R.D. 362, 370 (E.D. Pa. 2005) ("[A]ny doubt as to whether statutory damages are available under the UTPCPL [in the absence of an ascertainable loss] has been resolved in the negative." (citing Weinberg v. Sun Co., 777 A.2d 442 (Pa. 2001);

5

Saunders v. Berks Credit & Collections, Inc., Civ. A. No. 00-3477, 2002 WL 1497374, at *12 (E.D. Pa. July 11, 2002); Tenuto v. Transworld Sys., Inc., Civ. A. No. 99-4228, 2002 WL 188569, at *1 (E.D. Pa. Jan. 31, 2002))). Furthermore, the fact of the ascertainable loss must be non-speculative. Kaymark, 783 F.3d at 180-81 (citing Schwarzwaelder v. Fox, 895 A.2d 614, 619 (Pa. Super. Ct. 2006); Pashak v. Barish, 450 A.2d 67, 69 (Pa. Super. Ct. 1982)).

Here, the undisputed evidence in the summary judgment record demonstrates that Abraham has failed to establish that she has suffered a non-speculative, "ascertainable loss of money or property." 73 Pa. Stat. § 201-9.2(a). Abraham's own expert, Brian Becker, calculated Abraham's monetary damages from the nondisclosure of the balloon amount by determining the "present value difference . . . from [Abraham's] position with the modification in its actual state and the but-for modification with the same terms except with an amortization schedule corresponding to the last disclosed amortization term prior to the modification with the undisclosed balloon amount." (Becker Report, Ex. O to Forbes Decl., ¶ 41.) Upon doing so, Becker determined that Abraham had suffered no damages because the amortization term for her modification (480 months) was the same as the last disclosed amortization prior to the modification (480 months). (Id. ¶¶ 44-45, 48, 52-53, Tables 2 & 3.)

Becker states in a footnote that he "understand[s] from Plaintiffs' counsel that Ms. Abraham may . . . receive . . . reimbursement for costs and reasonable attorney fees," and he also suggests that Abraham may have suffered damages associated with a "loss of information value" arising out of Ocwen's failure to provide information about the amount of the expected balloon payment. (Id. at 31 n.63, ¶ 56). However, attorneys fees and costs that a plaintiff incurs in challenging a purported UTPCPL violation cannot constitute the "ascertainable loss of money or property" necessary to support a private cause of action under the UTPCPL See Grimes v.

6

Enterprise Leasing Co. of Phila., LLC, 105 A.3d 1188, 1193 (Pa. 2014) (explaining that a plaintiff cannot "manufacture the 'ascertainable loss' required to bring a private UTPCPL claim simply by obtaining counsel") Furthermore, a failure to disclose that gives rise to a so-called "informational injury" does not suffice to give rise to a private cause of action in the absence of an identifiable non-speculative loss of money or property. Plaintiff has submitted no evidence of any loss of money or property associated with her asserted informational injury, and thus such informational injury cannot to support her assertion of a cause of action under the UTPCPL.[1] (See Becker Report ¶ 56 (writing that, Plaintiff "experience[d] [a] loss of informational value," but he "do[es] not compute . . . damages over and above the change in net present values of the actual and but-for loan modification[]", which, for Plaintiff, was zero)).

The Second Amended Complaint lists other types of "actual and ascertainable losses of money or property" that Abraham purportedly suffered as a result of Ocwen's allegedly deceptive conduct. (2d Am. Compl. ¶ 101.) Specifically, the Complaint alleges that Abraham suffered losses on account of her (1) "obligation[] to pay [a] substantial balloon payment[] at the conclusion

---

[1] In a prior opinion in this case, we considered whether Abraham and other potential named plaintiffs could satisfy the typicality requirement for class certification by alleging that they had suffered only an informational injury from Ocwen's nondisclosures. Abraham v. Ocwen Loan Servicing, LLC, 321 F.R.D. 125, 184-85 (E.D. Pa. 2017). In our analysis, we suggested that an informational injury could potentially give rise to a right to statutory damages under the UTPCPL, and that the named plaintiffs who suffered only an informational injury, including Abraham, therefore satisfied the typicality requirement because their legal and factual positions were not markedly different from those of the other members of the classes they sought to represent. Id. at 183, 185 (citing Marcus v. BMW of N. Am. LLC, 687 F.3d 583, 597-98 (3d Cir. 2012)). While this analysis was adequate for purposes of assessing typicality for class certification, it did not ultimately resolve the merits question of whether Abraham may actually proceed with a UTPCPL action where she has suffered an informational injury but no "ascertainable loss of money or property." 73 Pa. Stat. § 201-9.2(a). As noted above, we conclude that a plaintiff cannot maintain a private right of action under the UTPCPL for either actual or statutory damages in the absence of an ascertainable loss of money or property. Accordingly, we conclude that Abraham's assertion of informational injury is unavailing on summary judgment.

of [her] loan[] in [an] amount[] that [was] unknown . . . when [she] entered into [the 2012] loan modification agreement[] with Ocwen"; (2) "higher principle [sic] balances throughout the term[] of the[] loan[]"; (3) "deterrence from seeking other remedies to address [her] default"; (4) "damage to [her] credit"; and (5) "additional income tax liability." (Id.) However, the summary judgement record does not support a conclusion that Abraham actually suffered these alleged injuries, much less that they could constitute "ascertainable loss[es] or money or property" that would support a cognizable claim under the UTPCPL.

First, the record does not support a conclusion that Abraham incurred any actual and "ascertainable loss of money or property" on account of her obligation to pay a balloon payment. Indeed, the record reflects that she has not had to pay the balloon payment and thus did not suffer any loss associated with such payment. (Abraham Tr. at 323; Kaymark, 783 F.3d at 180 (concluding that plaintiff did not suffer an ascertainable loss under the UTPCPL when he "never paid the disputed fees").) Moreover, the obligation to make the balloon payment, in its own right, did not constitute a loss, as it was not a new obligation, but rather was merely a continued obligation to reimburse Ocwen for the principal of the loan that Abraham took out in 2007 and refinanced in 2010 and 2012. (See 30-Year Note; 2010 Loan Modification; 2012 Modification Agreement.)

The record also does not support a conclusion that Abraham incurred any "ascertainable loss of money or property" by incurring higher principal balances throughout the term of her loan. Rather, the record evidence is that Abraham's principal balances decreased as a result of the 2012 Modification Agreement, because Ocwen forgave approximately $91,000 in principal and fees in connection with the modification. (Blanchard Tr. at 196-99.) Likewise, there is no evidence in the summary judgment record that Abraham's credit was damaged, that she incurred additional

8

tax liability, or that Ocwen's offer of the 2012 Modification Agreement deterred her from seeking other remedies to cure her default on her loan. See also Walkup v. Santander Bank, N.A., 147 F. Supp. 3d 349, 358 (E.D. Pa. 2015) ("While damage to a credit score could potentially lead to an ascertainable loss of money or property, damage to the credit score itself is a reputational injury that does not constitute a 'loss of money or property.'" (citing Allen v. Wells Fargo, N.A., Civ. A. No. 14–5283, 2015 WL 5137953, at *9 (E.D. Pa. Aug. 27, 2015)); Abraham Tr. at 219-225, 324 (testifying that she did not consider other foreclosure avoidance options or explore other financing options)).

Accordingly, there is simply no evidence in the record that Abraham suffered an "ascertainable loss of money or property" on which she can base a UTPCPL claim and obtain damages.[2] We therefore conclude that Abraham cannot prevail on her UTPCPL claim against Ocwen.

## IV. CONCLUSION

For the foregoing reasons, we grant Ocwen's Motion for Summary Judgment and enter judgment in Ocwen's favor. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.

---

[2] The Second Amended Complaint also seeks injunctive relief. However, as we stated in our prior opinion, the UTPCPL does not provide for injunctive relief to private litigants, and thus no such relief is available under the statute. Abraham v. Ocwen Loan Servicing, LLC, 321 F.R.D. 125, 168–69 (E.D. Pa. 2017).